Good morning, ladies and gentlemen. Family matters require Judge Rovner to be present elsewhere, but he is participating electronically. There's always a risk with the audio-visual hookup that things may be difficult in hearing, either Judge Rovner not hearing us or us not hearing Judge Rovner. And if that problem occurs, please speak up and we will make adjustments. OK, the first case for argument this morning is Breuder v. Hamilton. Your Honors, good morning. At the outset, I wanted to alert you that I'm going to be arguing on behalf of both appellants. I intended to have the first period of my argument devoted to the appeal by the Board of Trustees in 17-2215, and then the latter portion of my argument devoted to the appeal concerning the individual trustees. It is a bedrock principle of democracy that the people, through their elected representatives, have the right to control and to change the direction of their local governmental institutions and their top policy employee through elections of new boards. Laying duck boards cannot tie the hands of future boards, as was done here. That's not just good policy. That has been Illinois law for over a century, and Dr. Breuder's rationales for why he is an exception to the rule do not apply. Accordingly, the district court erred in not declaring the contract at issue here void ab initio. Mr. Breuder began to work at the college on January 1st of 2009, and he received, at that point in time, a three-year, six-month contract ending June 30th of 2012. Not four months later, in April of 2009, and importantly, at a period in time after an election but before the new board sat, Mr. Breuder's contract was extended through June of 2015. When four new board members, a new majority, took over in May of 2009, they had no opportunity to consider his contract throughout their entire six-year tenure. There were other provisions that tied the hands of future boards. This is a question of state law, of course. It is. And the district court analyzed the statute that applies to community colleges. I think we would appreciate it if you, too, analyzed that statute rather than talking in generalities. Your Honor, the statute that- Forgive me. Forgive me, Mr. Porter. As you do, would you also talk about Hostrop? I will, Your Honor. I expected we might talk a bit about my Hostrop case today. The statute at issue that Dr. Breuder relies upon is section 3-30 of the PCCA. And that provision grants certain powers to the community colleges in the state of Illinois. That statute does not specifically grant community colleges the power to award beyond-term contracts, award contracts that have supermajority and super quorum provisions, award contracts that allow the rollover of those contracts in private session. Later, in September of 2015, the Illinois legislature acted for the first time to allow community colleges to have beyond-term contracts. What the common law has stated for over a century in Illinois is that beyond-term contracts are illegal and improper unless the General Assembly clearly acts to the contrary. And 3-30, which is what Dr. Breuder relies upon, does not clearly say that. In fact, the statutory scheme in 3-30 is very directly analogous to the statutory scheme that the Illinois Supreme Court analyzed in the Milliken case and found wanting. And found it did not authorize county boards to give local units of government in counties the ability to extend beyond-term contracts beyond their term. And so when we look at the statutory scheme of 3-30, it is that example of, if Dr. Breuder is correct, it's that hiding of elephants in mouse holes that this court and other courts have indicated that we shouldn't be doing. And yet, more than 40 years ago, this court said that essentially this language, applying to this small group of individuals, authorizes longer-term contracts. And nobody has done anything to the contrary until the much more recent limitation is that the new statute imposes a limit of four years, right? It does. Yeah, it does. So the question is, what about HOSTRA? Seems to me the question is, what in the language that you're citing impacts the language of 3-32, which allows the board to establish tenure policies for administrative personnel? So in HOSTRA, speaking strictly to the statutory scheme, the first answer to that question, Your Honor, is that 3-32, which talks about tenure provisions, this isn't tenure. Tenure is a scheme that we are all very familiar with that essentially allows, oftentimes, faculty members throughout our state to have continuous employment unless there are issues with that employment or unless, in one of the cases cited by Dr. Bruder, the Kerger case, where there is an issue of retrenchment because of financial limitations of the school district. The problem with that is that that doesn't speak to what this contract is about. This contract is a limited term. It's a very lengthy term, but it's a limited term. It's not tenure. In fact, the contract itself spells that out. The contract between Dr. Bruder and the College of DuPage. Right. It merely provides additional specific tenure rights for faculty. So that doesn't alter the analysis for Bruder, it seems to me. Well, respectfully, Your Honor, Dr. Bruder is not a faculty member. He is the leading administrator in the college, and he reports directly to the board of directors. That's what I'm saying to you, that it doesn't alter the analysis as to Bruder, because it merely provides additional specific tenure rights for faculty. Well, Your Honor, if I understand correctly, I think I agree with you. I think that HoStrip is not helpful to the situation that we have here, particularly where we have a bevy of cases after HoStrip that continue to indicate and authorize the common law principle that beyond term contracts are not acceptable unless and until the General Assembly clearly states otherwise. It seemed to me that the cases that you cited didn't appear to involve an interpretation of the same language. But it's an issue here. But go on with your argument. Well, the language in the HoStrip case, this court relied upon and did its best reading of Illinois law. And we have now other cases that do their own best reading of Illinois law. And what it means and whether it is lawful to have beyond term contracts. And they have declared that those contracts are not lawful. The two provisions that the HoStrip majority relied upon were 3-26, which simply allows for the making and the appointment of salaries for a chief administrative officer, and section 3-32, which talks about establishing tenure policies. This isn't tenure. This is a contract with a chief executive officer of the college. And so neither of those provisions authorize beyond term contracts. They don't say that in- Mr. Porter, are you just trying to tell us we should overrule HoStrip? Your Honors, I think that this is actually a somewhat different situation. Because I think in HoStrip, what this court was doing 40-odd years ago was making its best guess at what Illinois law is. And so whether it's not- There is a holding as to the meaning of this statutory language. And the Illinois courts, in other cases, never disagreed with it, as I understand it. As for what this statute means for the group of people it covers, is that correct? Well, that statement is correct. But I think, to be clear, Your Honor, no court has agreed with the HoStrip reasoning. No court has cited HoStrip to authorize beyond term contracts. Let me ask, this may be mixing the two parts of your argument that you're thinking about. But can you direct us to any cases in which defendants in civil rights cases have invoked qualified immunity on the theory that the controlling case law was wrongly decided? I am not familiar with that. This is the first I've seen. I'm not sure that that's the ask of the appellants. Well, tell me what your ask is with respect to HoStrip. With respect to HoStrip, as it relates to the board, the ask is that you reject the reasoning of HoStrip and follow the clear line of authority in the Illinois appellate courts and the Milliken case, which state clearly that beyond term contracts are unlawful unless the General Assembly clearly states otherwise. And the General Assembly here, in this situation, did not until September of 2015. If that's an overruling of HoStrip, or if that's just a rejection of its principles because we have more wisdom since the mid-1970s, that matters not to us. Do you think that if those cases had overruled HoStrip, they would have said so? I think that those cases were, I don't know whether the briefing in those cases cited to HoStrip on either side of the ledger. So I don't know if the case was actually considered and before those courts. What we do know is what's in front of us in terms of both at the Illinois appellate level and other courts that have decided the legality of these beyond term contracts. And they have universally said no. And then when we look at the moorings of HoStrip, HoStrip was relying upon the Illinois school code, which itself, all the way since the 1920s, has specifically authorized beyond term contracts. And so HoStrip was relying upon an Illinois school code that is different from the PCCA. I guess the biggest problem I have with this argument, Mr. Porter, is that this is a 40-plus-year-old interpretation of a statute, which is, if that was a mistake, I understand you think it was. But if it was a mistake, it's the kind of thing that's generally fairly simple to correct, if it's a matter as important as you think it is for the people of the state of Illinois. And it hasn't been done. Or at least it wasn't done until 2015, when apparently there were lots of community college presidents and administrators who had so-called beyond term contracts. Could we get away from that? I'll want to go back to that in a bit. But I'd like to focus on the other grounds you've offered for trying to treat Mr. Bruder's contract as void. On the supermajority and quorum requirements, those terms in the contract are certainly unusual. They may be inappropriate. They may be unenforceable. But I didn't see in your brief a response as to why their mere presence in the contract would render it void from the beginning. Well, I don't know, actually, Your Honor, that the other side had raised that as an issue. But I'm happy to address it. But it's pretty obvious. There are the ones that raised it as an issue. Our position is that that provision does render the agreement void as an issue. I know. Why? Because if that provision take us back through 2009, 2010, 2011, 2012, all the way up to 2015, when a new board ultimately did act, with that provision in there, we can't unwind the clock. And we can't. Sure you can. A majority just acts, says this is valid, and dares Dr. Bruder to challenge that in court, but all through a process that provides notice and an opportunity to be heard. I mean, I don't see how those terms are enforceable. But I also don't see how they get you to the point of a void of an issue of contract that might, might, if it's clear enough, let you avoid rights for a notice and an opportunity to be heard before termination. I think that the asking to go back in time to members of a board who have this agreement in front of them and to then challenge these folks who are not lawyers, who are not necessarily giving that, I think that's a difficult ask. Compare that to what you've done. The board supposedly got some advice from attorneys to say, we can throw out this entire contract, and we don't even need to give Dr. Bruder a hearing. So what I'm suggesting is a lot more modest a step than what the board did. Well, I think that to the extent that there were a severability clause in here, we might have a more interesting argument. There wasn't one. In this case, when it is that a court should take, if a court looks at a contract without finding any severability clause in it and finds one potentially improper, illegal, or unenforceable term then the whole contract should be treated as void of an issue. It depends on the term, I suppose, Your Honor. But in terms of these terms, the supermajority and the- Well, take a perfectly ordinary clause in a contract. The contract might say, if this contract is broken, if whoever it is is fired, the board will pay $500,000 in cash as liquidated damages. Now, Illinois courts generally don't enforce liquidated damages clauses. But your line of argument seems to be that the presence of a liquidated damages clause in a contract means that there just never was any contract. And I don't think that's how Illinois courts understand the presence of an arguably improper clause. Am I misunderstanding something about Illinois law? I think Illinois law discusses whether there are provisions that are essential to the contract. And I would submit, Your Honors, that when a provision is central to a contract, and I would submit that this one is, because it talks about how Dr. Bruder would be terminated, how his employment would be terminated. And that is a poor- Mr. Porter, Bruder was offered little to no process in the course of his termination. He doesn't appear to have received a pre-determination statement of the cause for the termination. He was never offered an in-person hearing. I, you know, he had an employment contract which provided that his position would end at a set date, and he could only be terminated for cause. So right there, it seems to me, he'd have a property interest. Well, Your Honor, he was given notice. He was given a term sheet, if you will, of the concerns and the problems that the college had, and was given an ability to respond to those terms in writing. He was given a substantial amount of documentation. You're not asking us to decide this case on that basis, though, are you? I am not, Your Honor. It's not in front of us. I am not. I am not. I was just responding to Her Honor's inquiry. The college's view is that he was an at-will employee because this contract was void. We've talked about Haastrup. We've talked about supermajority and quorum, which would seem to me to be easily severable without providing a foundation for treating the contract as void. On the Open Meetings Act problem, as I understand the Open Meetings Act, in case of a violation, a court may declare the action taken in violation of the act as void, but may also consider a variety of other remedies. So given that flexibility in the law, how does the possibility that the extensions were taken in violation of the Open Meetings Act allow the board to just pretend that they didn't happen? Well, you are correct that courts have a wide array of possibilities under Illinois law. But in this particular circumstance, particularly the provision that allowed the rollover to occur with the action in private of the board chair, that provision is essential to the contract and is essential to the question of whether this contract is at will or not. Because what that allows is that allows, and as it occurred here, this contract was rolled out through 2019 without any public board action. I understand that happened. I understand that happened. My problem is that the board took this very bold step of assuming, for whatever reason, that it thought it could simply ignore the contract and the constitutional due process rights that would seem to go with it. And the fact that there may be a dispute about contract terms does not get you out from under constitutional obligations. Let me ask on the relevant to the qualified immunity point, I'm not sure exactly how this is in front of us, but your briefs talk about advice of counsel. Yes. First of all, is the advice of counsel in the record  I believe it is, Your Honor. Where is it? I believe that the, I believe there's an allegation in the complaint about that. No, I mean the content of the advice. Oh, I see. It may take me a minute to find that, Your Honor. I could certainly find it while I'm sitting down and get it to you. That would be helpful. And then, go ahead. No, I just wanted to remind Mr. Porter that you've used well upwards of 15 minutes. You're now over 22 minutes on one part of the case. So if you're going to discuss qualified immunity, this is the time. Thank you, Your Honor. I'd like that. The law rightly protects public officials from lawsuits unless and until allegedly unlawful conduct violates clearly established statutory or constitutional rights. And this is as it should be. Dr. Bruder may well have claims against the college. He may well have a count to liberty interest claim against the college. But when we look at what the law was in the fall of 2015, we can't Monday morning quarterback. We can't assume that the- What was the ambiguity on a matter of federal law given decisions like Codd against Velder, which say that defamation in connection with a discharge involves a liberty interest and requires hearings. I mean, that was a Supreme Court decision in 1975. You would think a decision of the Supreme Court would be enough to clearly establish some principle. The ambiguity, Your Honor, is not that principle. But the ambiguity is the question of law as to whether the statements alleged here in connection with the dismissal- Oh, well, if you're going to talk about the particular statements alleged here, you have a jurisdictional problem under Johnson against Jones and our en banc decision in Stinson against Gauger, which I noticed that your brief doesn't talk about. Well, Your Honor, we believe that Your Honors do have jurisdiction to consider count two and also count six as pending jurisdiction. Forget about numbering counts. Just tell me what they are substantively. We believe that Your Honors have jurisdiction to consider as a matter of law whether the statements alleged are opinion or fact. Those are questions of law that do not- That sounds like how something is classified as a matter of fact. And I wish you would address Jones and Stinson. Well, Your Honor, the issue in the liberty due process claim is do we need- the district court concluded that there was fact finding that needed to be made on the malice issue. And our view is that this isn't a case- I'm inviting you to address how Jones and Stinson bear on this appeal. Your Honor, I'm not up to date on Jones and Stinson. So I- Well, they are the controlling cases on appellate jurisdiction where there's a dispute about issues of fact. One from the Supreme Court, one from the Seventh Circuit en banc. And we always hope that lawyers would be prepared to talk about the controlling jurisdictional precedents. Your Honor, I don't believe that the issues here are issues of fact. We believe that the district court got that wrong. The question for Your Honors is whether the statements that are alleged- Could we focus not on the general campaign rhetoric about waste, fraud, and abuse, but about the resolution that the board adopted in terminating Mr. Bruder? Yes. That allegation may well serve a claim against the board. But as did the individual trustees, they didn't publish that statement. And the Gary- McMath v. Gary considered this very question about when there are statements, do our individual defendants- Wouldn't any trustee who voted for that resolution be adopting the statement? But they do get- the individual trustees do get protection in their public acts. And this was a public act. Under federal law? Yes, under federal law, in cases that we've cited throughout our briefing. And the- Which ones are you relying on? Judge Hamilton, I missed what you just said. I asked Mr. Porter to identify the cases he's relying upon to excuse trustees from individual responsibility for the allegedly defamatory content of the resolution. Yeah, OK, thank you. Well, the- I have to tell you, Mr. Porter, that's my exact question to you. The district court made that finding. And the- Well- Your Honor, one of the things that I will- I'm happy, again, to find it as I talk and rebuttal, but- Maybe you'll have- well, if you have time. Let me just ask you quickly one practical question about your contention regarding the beyond term contract. If I understand your position, your client's position, let's say if back in 2014 a community college presidency became vacant a year before an election, your position, if I understand it, would mean that the board could not adopt a contract that would be valid beyond the next election. Is that right? That's correct. So a community college would be trying to invite a distinguished scholar, competent administrator, in a national search, which is likely to take several months, to move to Illinois to take a contract that has a term of just a few months. Is that right? That's what you think the law would require. The law until September of 2015 in the community college context did not allow for beyond term contracts. Did any community college in Illinois operate on that kind of a basis before the 2015? I don't know, and that's not in the record. We do have the information that was accompanied the enactment of the 2015 amendment. It seems to me an extraordinary position to take. Well, your honor, the flip of that, of course, is that community colleges could stay close to the microphone. You have 60 seconds left. The flip side of that, your honor, is that a contract could be awarded for 10, 20, 30 years, and tie the ends up. Right, this is the red-haired Zoroastrian hypothetical. That's one of them, and we could spend the next month thinking about others. But that's the danger, and that's why the Illinois common law prohibits such contracts. Thank you. Thank you, Mr. Porter. Thank you. Mr. Figliolo. May it please the court. My name's James Figliolo. I'm appearing on behalf of Dr. Bruder. My partner, Melissa Eubanks, is also representing Dr. Bruder in this argument. I've set aside 20 minutes to address the issues relating to the validity of the contract. I think you'll find that you will address whatever questions the judge has asked. I will, and my partner is focusing more particularly on the rights. You realize this is why the court says that oral argument on behalf of a single party should not be divided. I understand. We will ask you what seems to come up. In your honor, and I will answer. We're dividing it this way for what we think was a better way to do it, but I understand the court's position. Mr. Figliolo, before you even start, I'd like to ask you this, please. Mr. Porter maintains that no Illinois state court has mentioned Hofstra. Can you name any that have adopted our analysis in Hofstra? There is a case call that we've said in our briefs, Libertyville Education Association versus Board of Education at school district number something, that did not deal with a particular contract with an administrator, but dealt with the same arguments raised with respect to a collective bargaining agreement for teachers. And in that case, among other analysis, it talked about Hofstra. And it cited it with approval at some length. And in the same context that we've been talking about it with respect to the PCCA. And it just had a different factual situation, so it's not directly on point, but it cites it with approval. There are two other Northern District of Illinois cases following Hofstra that have cited Hofstra in dealing with president's contracts with presidents of community colleges, and have cited it with approval, and reached a similar holding. We hope district courts cite our cases with approval. Well, I think that's generally the case, but I wouldn't swear at all locations. There are exceptions. I'll grant that. So in any way, I think the Hofstra analysis is right on. I can't really get much better than that, and I don't know if there is a way to get better on it. It analyzes the Community College Act. It cites the various provisions that come into play. It recognizes the broad power that the legislature vested in community college boards to make decisions about the duration in terms of contracts. And it recognizes that the Milliken line of cases, which are based on two school cases from the 1800s, Stevenson and Davis, were overruled by the Illinois Supreme Court in 1940 in the Sloan case, where the court recognized that when the Illinois school code was adopted in 1927, that that rendered the Stevenson and Davis decisions about the on-term contracts inapplicable. And it's that principle that's also cited in the Hofstra case that makes it pretty clear that from at least 1927, the Stevenson, Davis, Milliken line of cases with respect to the term of contracts did not apply to the Community College Act. The recent amendment, the September 2015 amendment to the Community College Act, is actually further support for the position that up until that time, the legislature recognized and the community college boards recognized or believed that they had the right to enter into multi-year contracts. Not only is it in the legislative history, but it's also in our complaint where we allege that Dr. Bruder was the fifth president of the College of DuPage. And the College of DuPage was in existence from the 1960s. We further allege that his predecessors had multi-year contracts, and simple math suggests that they were long ones. And the College of DuPage, therefore, had that history. And that's right in the record in addition to the legislative history that recognizes that approximately 20% or more of community college presidents as of September 2015 had contracts, the duration of which was in excess of four years. Now, the legislature at the time, and it was actually in response to a lot of the publicity relating to this matter, said, we want to put restrictions on it. And the proponent of the amendment actually stated, currently, under the law, there is no limit on the duration of contracts. So we want to address that. And they did address that. So that amendment actually supports the same arguments. We think that the law is uniform. Holstrup has never been challenged or questioned in any reported case. And we believe it is the law. It's a clearly established property interest and should continue to be. I'd like to address the other arguments, the supermajority argument, in particular. In addition to the remedy, the fact that it doesn't render the contract void adminitio, the type of provisions, even though it's not a common provision, is certainly authorized by the Community Colleges Act. Because that's not obvious to me, Mr. Feely. Well, it's not explicit. But it does provide, in its enumerated powers, that the board can set terms and policies for the removal for cause of an administrator. And it does provide that you can set the terms. The board has the power to set the terms. And when you look at that enumerated power in the context of section 3-30, which says that here are the enumerated powers, but the board is not limited to those enumerated powers. They can adopt anything. Let's compare the powers of the United States House of Representatives, which, let's say, enacts a controversial bill on a party line vote and includes a provision that says this can be repealed only by a 2 thirds majority vote. Say the Affordable Care Act. Surely that doesn't work, does it? I understand your point, but it doesn't apply to a contract. Here's what I'm thinking, and why I think it's different from what you're talking about legislation generally, is you're empowered, the board's empowered to enter into a contract with its administrator and set the terms and the ways in which cause can be determined and how a person can be removed. They do that. They have the right to put that in the contract because this provision, the supermajority provision, really relates only to whether there is a determination of cause, if cause exists to terminate. And there is a case, a Seventh Circuit case, that's actually cited by the appellants on a different point that I think helps inform us of this. And this is the head case. I don't like calling it the head case, but that's the name of the case. And it dealt with and observed that the particular employee in question had a contract that gave her more rights than the statute specifically provided. And the court observed, whether that was by mistake or intentional, if the contract is entered into and it accords the employee greater rights than that provided by statute, it is nonetheless enforceable. And that, I think, is a sound principle because the supermajority provision here is only related to the process of determining what grounds exist to terminate the contract and how that can be done. It doesn't relate to. I would think that in that kind of case, Mr. Filio, let's suppose the supermajority is required by contract but not by statute. I would think that a majority of the board could take effective action, say we're terminating this contract. Four of us think there's good cause. And that might be a breach of the contract. Maybe there is a claim for damages, but you're out as president, and the termination takes effect. That could be done. In fact, you don't even have to have a termination for cause provision in the contract. You can just have a set term. And the board can say, you're fired, and we'll accept the consequences. So I don't think this provision makes it void at all or is even improper. I think it is a proper exercise of their rights. If I could address the open. Let me give you a site on the Head case. It's Head versus Chicago School Reform Board of Trustees. It's a Seventh Circuit case in the year 2000. In the provision, the page is the last page of the opinion that deals with that issue. I'd like to address the section F argument, which is the automatic provision that violates the Open Meetings Act. I think it's clearly not a, even if it did, it wouldn't render the contract void of an issue. But there's nothing in that provision. And we're talking about not what happened, but whether that provision in itself violates the Open Meetings Act. And it does not. Because it only provides ways and requirements of notice between the parties of the deadline coming up to do something if you don't want to renew it. And you can do that in closed session if you want. You can even set out terms about firing somebody in closed session. It's just you can't take final action in closed section. And this section does not have anything to do with a final action. Seems to involve final inaction, right? It may. It may. Would you agree, Mr. Filio, that on a lot of these things we're dealing with the beyond term contract, at least we're dealing with a question of last impression here? It may. Basically, I think it's important this amendment to the contract really kind of, the amendment to the statute, I mean, really addresses a lot of these issues. And it's important, I think, to note that it's a prospective enactment. It, I think, intentionally allows any contracts before that time that may be different from those provisions to. With respect, Mr. Filio, I think I understand your liberty interest claim to the extent it's based on the resolution that the board adopted, which has a detailed set of accusations against Dr. Is it Dr. Bruder? Is that the correct pronunciation? Yes. I have, frankly, a lot of questions about the extent to which, I don't know whether we've got jurisdiction over them or not, but the extent to which your liberty interest or defamation claims are based on what I will loosely call campaign rhetoric. Few challengers are silent on the subjects of waste, fraud, and abuse by incumbents. And the notion that incumbents have a both constitutional and common law right of action when they are attacked by challengers would seem likely to stifle some pretty healthy political debate. Your Honor, to address that directly, if this campaign rhetoric was just campaign rhetoric and it was going back and forth, there probably wouldn't be a defamation claim. But whereas here, one of the people who is directing this whole thing is already on the Board of Trustees and is doing this in the context when other serious things are going on that suggest that she has inside knowledge or superior access to information which would make otherwise rhetoric more factual in appearance and its effect, then I think that makes a difference. Moreover, we have a section 1985 conspiracy claim with the individuals and the then existing board member that I think the question is. Mr. Piglio, is there any distinction between statements made in a termination memo and those made to the public? The content of the statements are pretty much the same. They post it. If you're talking about the resolution, that was posted publicly. And part of its damaging effect, I think, is that it looks like it's an official document when it's a defamatory communication. I don't know if I answered your question directly, but. Yeah, I mean, is there a problem if board members can't be forthright in termination memos? You know, for fear of a defamation suit was where I was going. But as you say, this was publicly disseminated. Correct. And it had a stigmatizing effect on Dr. Pruder's liberty interest. Yeah, OK. Thank you. Which doesn't violate the Constitution if he got due process before the board. He did not get due process. And that takes that action. And I think that's an issue that will be, perhaps, dealt with below. I take it your point is he got neither due process nor damages. You don't have to hold a hearing to fire a football coach, even if his contract runs for another year. You just have to pay off his contract. Right. There's more to it in this case. And it has that. If you fire him saying he's a crook, though, then there are issues. You know, there's other things. Mm-hmm. We know. And that happens. And that's accurate. So unless you have any further questions, particularly on the property interest issue, I can yield to my partner. Are you going to be addressing qualified immunity? I'll address qualified immunity in the property interest context. Go ahead, please. And that, I think, is really the question is, is this a clearly ascertainable right? Did he have a clearly ascertainable property interest that was entitled to constitutional protection? And for all of the reasons we've been arguing, it is so clear that he did. And if you're looking at Seventh Circuit, uncontested Seventh Circuit opinion. The problem is this, Mr. Filio, how do we treat an official who says, well, look, I got advice from counsel, who these group of lawyers looked at all these Illinois cases, told me Hostrop is really not a reliable guide to the law. And so I thought I've got at least a colorable reason. I can say in good faith that I don't think there's a valid contract in place here. Is that enough to nullify the property interest and the right to due process? A couple of things I'd like to observe. One is I don't think subjective good faith is what's really going to be driving it. And two, I love lawyers and I respect lawyers, but you can sometimes hire lawyers to give you an opinion that will allow you to do something that's not meritorious. And it doesn't change what would otherwise be a clearly ascertainable right. So I think we need to look beyond objectively the advice of counsel and look at, was it a clearly ascertainable right? Was there a basis for believing that they had the right to terminate this contract? And we've got a point, Judge Tone's opinion for the court in Hostrop pointed out in response to an argument there that that contract was void for fraud, that so long as there was a genuine dispute on the issue of fraud, plaintiff had a claim of entitlement that gave him a right to a hearing. Yes, Your Honor, and I think that was decided before Hoth, I think it was Hoth that said that the subjective belief should be taken into account. Hostrop's notion of immunity is a little dated at this point. But the point that, in essence, to deny somebody a right to a hearing, you would need, in essence, a total slam dunk of a position on voidability, on being void, may at least deserve our attention. I understand, Your Honor. I happen to believe that this beyond term contract issue is so clearly established until the amendment that any decision to fire him without a hearing is a deprivation of his property interest. I see my time has expired. I'd be happy to answer any other questions, but my partner can address some of the other questions you might have. Thank you. Ms. Eubanks. Good morning, Your Honors, and may it please the court. I don't want to belabor many of the issues here because I think you already asked Mr. Filio some of the questions that I would be addressing, but I just want to emphasize two points. Your Honor seemed to be interested in the board resolution, which the board publicly posted to the college's website days before it voted on that resolution to terminate Dr. Bruder's employment with the college. And importantly, there is no federal law which would protect the individual trustees here who the complaint alleges, fact sufficient to infer that they not only participated in drafting that resolution, which contained a number of false statements which were stigmatizing to Dr. Bruder, but that they participated in causing the resolution to be publicly posted to the board's website, and then they alone voted on terminating on that resolution. And there's no federal law that the board cites which says that they would be immune from liability for those actions. In fact, this is the essence of a Section 1983 claim for deprivation of a constitutionally protected right, is that you can hold individual government officials accountable and liable for depriving a public employee of his constitutionally protected right. And as this court pointed out, it has been clearly established for decades that when a public employer terminates a public employee contemporaneous to the making of false and stigmatizing statements, without providing a public employee a hearing to clear his name, that a liberty interest has been implicated. And that's exactly what the complaint alleges here. And should the district court have examined the liberty interest claims as to each individual defendant, rather than to the individual defendants as a collective group? Well, respectfully, Your Honor, I think the individual trustees have waived that particular argument. They made no argument to the district court that they should be entitled individual deference on their qualified immunity defenses. They didn't raise it at all. And as this court is aware, you waive an argument for appeal if you don't first raise it to the district court. You've essentially taken away the district court's jurisdiction to review that issue first. And so I don't think that the judges here today should be granting them that sort of individual deference. And I think this goes to another question Your Honor said, does this court even have jurisdiction to consider the issues that the college or the individual trustees have raised today? As you heard in Mr. Porter's argument, the issue that they're saying should be reviewed by this court is whether the specific statements that were allegedly made by these trustees were fact or opinion. And that is, in all the cases presented by both parties, established that that is a very fact-intensive analysis. And we are here before the court on denial of a motion to dismiss under Rule 12b-6. And under Twombly, a plaintiff is not required to plead every single fact that would be necessary to prove its claim. And that is essentially what the trustees are saying should have been done here, that Dr. Bruder should have filed a 100-page complaint with every single instance of what has happened and what led up to his termination. Counsel, would the plaintiff have a viable liberty interest claim based on the resolution against the trustee who voted against it? Against him? I mean, no. Against the resolution. No, I don't think he would. Because by their no vote, what they're saying is that there's no basis here. The charges in this resolution are false. And we think that they're false. And if they're not making those aren't, that wouldn't be a defamatory statement if they're saying these. So they would have no, he would have no claim against them, I agree. And I will address this point. The reason the trustees believe that they're entitled to immunity against the statements made in that resolution is by their belief that state privileges and immunities, particularly the Illinois Tort Immunity Act, apply to a federal constitutional claim. And the law has clearly established that it does not. And this court in Payne versus Churchage made clear that the Illinois Tort Immunity Act does not apply to a federal constitutional claim brought under Section 1983 against either the governmental entity or the individual officials that were alleged to act. And that's exactly what the district court held as well. And so their belief that the district court had somehow dismissed from the liberty interest due process claim any of the statements that the individual trustees made during public board meetings, or even the statements made in this resolution, is just wrong. Those statements are actionable as to Dr. Bruder's liberty interest due process claim under Section 1983. And there is no federal law that says that these trustees cannot be held accountable for that. In fact, all the liberty interest due process claims under Section 1983, both in this circuit and in the Supreme Court, clearly indicate that you can hold individual officials accountable for actions taken on behalf, which they cause to be taken on behalf of the governmental entity. Ms. Eubanks, on the question of advice of counsel, do we have that in the record? In the record, I do not know. What Dr. Bruder alleges in his complaint is that upon taking office, these four individual trustees acted or voted on a resolution to hire two law firms, both of which, one of which had represented one of the trustees in her individual capacity, another which had represented one of the governmental watchdog groups, which were acting in concert with these trustees to cause Dr. Bruder's termination, and that they hired them for the purpose of conducting an internal investigation to find purported cause for Dr. Bruder's termination. You haven't seen the advice of counsel? No, we haven't seen the advice of counsel. It's not in the record. It's not properly before this court. OK, thank you. If your honors have no further questions, I will gladly sit down. Thank you. Thank you, Ms. Fairbanks. Anything further, Mr. Porter? Your honors, and Judge Hamilton, it is in the record. In the complaint that is attached, and I'm speaking now to the advice of counsel issue, Exhibit L to the complaint is a resolution. It's the board action that discusses the decision  and it is Exhibit L to the complaint, which is part of the record. And so that advice of counsel discussion is part of the board action, and part of what's posted with the board in advance of the board meeting. In terms of Mr. Felio's argument. Exhibit L looks like the minutes of a board meeting. It is the attachment attaches a description of what the counsel's advice is. And it discusses the point of initial issues. The question, as I understood it, was whether the opinion of counsel is in the record, rather than whether somebody else's impression about the opinion of counsel is in the record. I believe that what those board minutes and what that board agenda shows is the advice of counsel relative to this holster of issue. In terms of the- Thank you, counsel. The case is taken under advisement. Thank you.